UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WALTER DETHIER and JOSEPHINE DETHIER,
    Plaintiffs,

v.

NATIONAL LIQUIDATORS, a division of G. ROBERT TONEY ASSOCIATES, INC. and WACHOVIA BANK, N.A., a WELLS FARGO COMPANY,
    Defendants.[1]

3:09-cv-1507 (WWE)

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE

Plaintiffs Walter and Josephine Dethier have brought this action for "false detainer or arrest," conversion, theft, trespass, negligent and intentional infliction of emotional distress, misrepresentation, fraud and violation of the Connecticut and Florida Unfair Trade Practices Acts. Now pending is defendants' motion to dismiss for lack of venue or to transfer venue (Doc. #26). For the following reasons, the motion to transfer venue will be granted.

The Court presumably has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332. See note 2, infra.

### BACKGROUND

For purposes of ruling on a motion to dismiss or to transfer venue, the Court accepts all allegations of the complaint as true.

Plaintiffs Walter and Josephine Dethier are citizens of Connecticut. Defendant

---

[1]    Plaintiffs originally named Jason Barroncini as a defendant. They have since voluntarily dismissed all claims against him (Doc. #28).

1

National Liquidators, a division of G. Robert Toney Associates, Inc., is a citizen of Florida and has a principal place of business in Florida.  Among other business pursuits, it repossesses boats.  Wachovia Bank, N.A. is a Delaware corporation.[2]

Plaintiff Walter Dethier is the owner of a forty-foot Magnum offshore cruising vessel, which, during all relevant times, was not subject to any liens, mortgages or encumbrances of any kind.  The hull identification number ("HIN") of Dethier's vessel is MAG4001182484,[3] and the vessel bears the name "MAGNUM 40" on its stern.

In August 2008, Wachovia contracted with National Liquidators to repossess a 1984 forty-foot Magnum Marine Sport cruising vessel named "VA BENE," owned by Va Bene Corp. and Glen M. Gallant, bearing HIN MAG400111484.  Wachovia took an active role in the attempted repossession process.  As of August 2008, Gallant had been convicted of bank fraud and imprisoned until 2016.  Wachovia and National Liquidators were unable to locate the Va Bene from August 2008 until October 2008.

On October 15, 2008, Wachovia employee Kimberly Burch located a listing for a 1984 Magnum Sport for sale by WME Yachts Ltd., in Fort Lauderdale, Florida and forwarded this information to National Liquidators, requesting that they pursue the listed vessel in furtherance of their combined efforts to repossess the Va Bene.  The vessel listed for sale was not the Va Bene, but was plaintiff's vessel.  Plaintiffs had listed their

---

[2] Plaintiffs do not state where Wachovia's principal place of business is located but assert that it has multiple branches and an executive office in Connecticut.  They should amend their jurisdictional statement pursuant to 28 U.S.C. § 1653.

[3] This HIN number included in plaintiffs' complaint is incorrect as it has an extra digit.  Plaintiffs have stated that they will file an amended complaint correcting this scrivener's error.

vessel for sale with a broker, Curt Weissinger of World Maritime Exchange/WME Yachts Ltd. located in Woodstock, Connecticut, and Weissinger had placed a listing for plaintiffs' vessel on the internet.

Jason Barroncini was employed by National Liquidators and is identified by it as a repossession "agent." He held a license as a Recovery Agent Intern from the Florida Department of Agriculture and Consumer Services. On October 24, 2008, Barroncini left a telephone message for WME Yachts, claiming to be the nephew of an uncle by marriage that was interested in the boat and stating that this fictitious uncle wanted him to check out the boat on the WME website.

On October 28, Barroncini spoke by telephone to Weissinger who was located in Connecticut. Barroncini told Weissinger that he was calling on his uncle's behalf and that his uncle, who was a subcontractor for Halliburton in Dubai, wanted him to look at the boat. In reliance on these false statements, Weissinger informed Barroncini that the Dethiers' vessel was en route from Connecticut to Florida and would be in Key Largo, Florida around October 30. On the phone call, Barroncini also stated that his uncle wanted him to take additional photographs of Dethier's vessel. In response, Weissinger forwarded a Broker's Recognition Form to Barroncini asking Barroncini to execute and return the form.

After consulting with other representatives from National Liquidators, Barroncini tried to arrange a viewing of the vessel without signing any paperwork. On October 31, Barroncini called Weissinger in Connecticut and told him that he was not going to sign anything until he could physically view the boat and take pictures of it. Barroncini arranged a viewing of the vessel for November 4 so that he could take pictures of it. As

a result of Barroncini's misrepresentations, Weissinger contacted plaintiffs and requested permission to disclose their contact information and the vessel's location, which permission plaintiffs provided.  The broker further provided Barroncini with plaintiffs' cell phone number.

Barroncini, disguised as an interested buyer, left a voicemail on plaintiffs' cell phone, stating:

> This is Jason Barroncini, the nephew of Bill Odell who is interested in your boat.  Curt gave me your number and told me you were going out of own Wednesday for a wedding.  Wondering if I could come down on Tuesday to take pictures of the boat.  Got any questions?  Call me at (954) 558-1284.

At no time during his conversations with Weissinger did Barroncini attempt to verify the title or vessel identification of the vessel seen on the internet.

Barroncini did not show up for the November 4 appointment to view and take pictures of the vessel.  Plaintiffs allege that Barroncini never intended to keep his appointment.  He ignored numerous emails to confirm the appointment and made no attempt to verify the identification of the vessel.

At all relevant times, the vessel was located on a navigable waterway of the United States.

On November 2, Barroncini, a captain, a mate and two others, acting as agents of National Liquidators and Wachovia, proceeded to the private marina in Key Largo, Florida in an attempt to repossess the vessel.  No member of the repossession crew had a Class "E" or higher license.  Further, the crew used an unmarked car as its repossession vehicle, which did not bear the recovery agency's license number or other identifying information in violation of Chapter 493 of the Florida Statutes.  All members

of the crew dressed in black clothing.

At approximately 9:25 pm., the crew saw plaintiffs on the vessel.  They returned one hour later and, without any indication that plaintiffs had left the vessel, cut the dock, cable and water lines, disconnecting the power lines and towing it away from the dock. At no point did the crew make any attempt to verify the HIN, name or title of the vessel, despite the HIN being clearly visible on the transom of the vessel.  Nonetheless, the crew attempted to repossess the vessel.

While sleeping on the vessel in a darkened cabin, plaintiffs were startled and awakened, aware that an unknown person or persons had boarded the vessel and taken control of it.  Plaintiffs feared for their lives, safety and well-being.  Mr. Dethier confronted by Barroncini who stated only that he was attempting to repossess the vessel.  Mr. Dethier told Barroncini that there were no liens on the boat and that the police had been called, and the crew fled the scene without further explanation.

When asked by a neighbor who had responded to the altercation to produce paperwork authorizing the repossession, a member of the crew responded to the effect that they did not need any paperwork.  Neither the crew nor National Liquidators informed law enforcement authorities that they were intending to carry out a repossession.

On November 3, National Liquidators related to Wachovia the information concerning the previous night's attempted repossession.  Although National Liquidators and Wachovia were on notice of plaintiffs' assertion that they had wrong vessel, Wachovia told National Liquidators that it was going to begin a replevin action to remove the parties living on the vessel and put the case on hold.

On December 6, Barroncini informed National Liquidators that he had "checked out" the vessel that he had attempted to repossess on November 2, and that there was still a "for sale" sign and a Connecticut phone number on it. Again, Barroncini identified it as the "Va Bene" vessel without attempting to confirm the HIN or any other identifying information.

On January 20, 2009, National Liquidators communicated with a Wachovia employee, "Kim," regarding Barroncini having "checked out" the vessel on December 6 and forwarded photographs of plaintiffs' vessel. Despite knowledge that it was the same vessel from the November 2 attempt and knowledge that Mr. Dethier had made clear that it was the wrong vessel, and without having made an attempt to verify that it was the "Va Bene" vessel, on January 21, Wachovia employee "Kimberly" authorized the expenditure of fees in the amount of $900.00 and instructed National Liquidators to "Please repo ASAP."

On January 22, Barroncini returned again with two other persons to the private marina in Key Largo where plaintiffs' vessel was docked in the early to mid afternoon, in full daylight. None of these individuals identified themselves to the dockmaster or anyone else. One member of the repossession crew approached the vessel, cut the mooring lines, the television cable and water supply line, disconnected the shore power cord and proceeded to tow the vessel away from the dock in the navigable waterway. When approached by the dockmaster, a member of the crew handed her a "repossession document" and then fled the marina on foot toward the parking lot.

The repossession document listed a HIN, owner's name, USCG document number and vessel name that did not match plaintiffs' vessel. Such mismatch was

clearly visible upon inspection of plaintiffs' vessel. The dockmaster contacted the Monroe County Sheriff's Office, the United States Coast Guard and the FWC for assistance. Thereafter, the Sheriff's Department made contact with the Coast Guard requesting that the vessel be escorted back to the marina.

While awaiting the return of plaintiffs' vessel, an officer from the Sheriff's Department was approached by Barroncini who identified himself as an agent of National Liquidators, presented a National Liquidators identification card and stated that he was responsible for the removal of the vessel. Barroncini identified himself as a supervisor of the repossession crew despite the fact that he was licensed only as an intern. No member of this second crew possessed a Class "E" or higher license.

Through the intervention of the Sheriff's Department and the Coast Guard, plaintiffs' vessel was returned to the dock. The vessel incurred substantial physical damage through the repossession, return or subsequent investigation by law enforcement officials.

On June 30, 2009, the State of Florida Department of Agriculture and Consumer Services filed an Administrative Complaint against defendant G. Robert Toney and Associates, Inc. d/b/a National Liquidators alleging in part as follows:

> On or about January 22, 2009, in Monroe County, Florida, Respondent committed fraud, deceit, negligence or misconduct in the practice of regulated activities under Chapter 493, Florida Statutes, in which Respondent assumed responsibility for the actions of Jason Barroncini, an employee, who wrongfully repossessed a boat that was owned by Walter Dethier.

A similar complaint was filed against Barroncini himself. Both National Liquidators and Barroncini entered into stipulations with the Florida Department of Agriculture and

7

Consumer Services, each agreeing to pay administrative fines in the amount of $1,000.00 in response to the respective complaints.

## DISCUSSION

Defendants move to dismiss this action pursuant to 28 U.S.C. § 1391, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404.  Because jurisdiction in this case is based upon the diversity of citizenship of the parties, Section 1391 governs the venue of this action.  Section 1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In their complaint, plaintiffs assert that this venue is appropriate under 28 U.S.C. § 1391.

Corporate entities are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction...." 28 U.S.C. § 1391(c).  Neither of the remaining defendants deny being subject to personal jurisdiction in this district.  Given the dismissal of Barroncini as a defendant, all remaining defendants reside in this district and venue is appropriate.  As such, the Court will not dismiss this action for improper venue.

Where, as here, the court possesses personal jurisdiction over defendants, the question of venue is evaluated under the interest of justice standard of 28 U.S.C.

8

§ 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). A district court is given broad discretion in making determinations of convenience and fairness under Section 1404(a). D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006); Hawley v. Accor N. Am., Inc., 552 F. Supp. 2d 256, 258 (D. Conn. 2008). In this analysis, the court considers the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair, 462 F.3d at 106-07. Courts have also examined "the forum's familiarity with the governing law" and "trial efficiency and the interest of justice, based on the totality of the circumstances." Jones v. Walgreen, Co., 463 F. Supp. 2d 267, 271 (D. Conn. 2006). "The burden of justifying transfer of venue lies with the moving party, who must make a clear and convincing showing that transfer should be made." Paragon Realty Group LLC v. LeCates, 2007 U.S. Dist. LEXIS 11458, *11 (D. Conn. Feb. 5, 2007). Plaintiffs' choice of forum should control absent a "strong case for transfer." Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989).

### A. Plaintiffs' Choice of Forum

Plaintiffs chose to litigate before this Court because they live in the state of Connecticut. Based on the complaint, the only events that took place in Connecticut were Weissinger's receipt of two phone calls from Barroncini. Plaintiffs' choice is not

9

one substantively related to the merits of this case, but one of convenience.  See <u>TM Claims Service v. KLM Royal Dutch Airlines</u>, 143 F. Supp. 2d 402, 404 (S.D.N.Y. 2001) ("[A] plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum.").  Because few, if any, of the events that gave rise to the alleged torts took place in Connecticut, this factor slightly weighs against transfer.

### B.    Convenience of the Witnesses

The location of the witnesses and the convenience to the court for them is an important factor in deciding whether to transfer a case.  See <u>Ford Motor Co. v. Ryan</u>, 182 F.2d 329, 331 (2d Cir. 1950).  To assess the convenience of the witnesses, the court examines the number of witnesses, their respective residence and the "materiality, nature, and quality of each witness."  <u>Royal & Sunalliance v. British Airways</u>, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001); see also <u>Argent Funds Group, LLC v. Schutt</u>, 2006 U.S. Dist. LEXIS 60469, *14 (D. Conn. June 27, 2006).

In the parties' 26(f) report, plaintiffs state that they will have to conduct discovery on defendants' relationship with each other, the state administrative proceedings against defendants, the identities of the members of the repossession teams, internal proceedings that led to the events of this case, similar conduct by defendants and defendants' respective finances.  As such, defendants anticipate that plaintiffs will call as witnesses members of the repossession crews, all but one of whom are sub-contractors of National Liquidators and not employees of defendants.  Defendants also anticipate that plaintiffs will call the neighbor who responded to the first repossession attempt, the dockmaster at the marina and representatives of the Monroe County

Sheriff's Department and the Coast Guard. These witnesses are all located in Florida. In their response to defendants' motion, plaintiffs claim that their witnesses will be limited to those individuals with knowledge of defendants' decision-making process in choosing to repossess plaintiffs' vessel. The testimony of such individuals, plaintiffs contend, will be assured by their employment relationships with defendants. Further, plaintiffs claim that they will call as witnesses Weissinger, plaintiffs' experts in Connecticut and boat repairmen in Connecticut.

      The Court is dubious of plaintiffs' efforts to prove their case without the testimony of (1) any member of the repossession crew who is not an employee of one of the defendants, (2) any witness of the attempted repossessions except plaintiffs themselves, (3) the law enforcement personnel who responded to the attempted repossessions or (4) the dockmaster. The testimony of these individuals will be critical to proving the various elements of the torts alleged in the complaint. Further, this contention of limited discovery is belied by the broader anticipated discovery listed in the 26(f) report.

      This factor thus weighs in favor of transfer to Florida where these witnesses reside.

      **C.**    **Location of Relevant Documents**

      The parties' respective documents are located in their home states. Courts have repeatedly found that, given the ease of electronic data storage and transfer, for documents that are easily mobile, this factor is not as important as it once was. See, e.g., Hawley, 552 F. Supp. 2d at 260; Am. Steamship Owners Mut. Protection & Indent. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The

location of relevant documents is largely a neutral factor in today's world of faxing, scanning and emailing documents."). In this case, however, defendants, as large corporations, are likely to have their documents in electronic format whereas individual plaintiffs are not. Accordingly, this factor weighs against transfer.

### D. Convenience of the Parties

"District Courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair, 462 F.3d at 106.

It is apparent from the parties' papers that defendant Wachovia has a strong corporate presence in the state of Connecticut. In addition, Mr. Dethier averred that the vessel is moored in Connecticut in the summer and Florida in the winter. The Court does note, however, that there is no information as to whether plaintiffs reside in Florida even when their vessel is there. Therefore, the Court recognizes that it would inconvenience plaintiffs to transfer this litigation there. The Court has no information about National Liquidators' relationship to Connecticut. Because all three parties have meaningful ties to Florida and the Court has no knowledge about National Liquidators' relationship to Connecticut, this factor weighs slightly in favor of transfer.

### E. Locus of Operative Facts

All the events of the complaint took place in Florida except Weissinger's receipt of two phone calls in Connecticut, which serve as the basis of the fraud claims against defendants. These phone calls, however, cannot be said to have "occurred" in Connecticut. When examining claims for misrepresentation on a motion to transfer

venue, "misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." MAK Mktg. v. Kalapos, 620 F. Supp. 2d 295, 310 (D. Conn. 2009). This factor thus weighs heavily in favor of transfer.

### F.  Ability to Compel Unwilling Witnesses

The parties' proposed witnesses include individuals who are not employees of the parties. The ability to compel unwilling witnesses is only relevant for potential witnesses whose presence the court would need to compel because "employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." BRMS, LLC v. North Am. Flight Services, 2006 U.S. Dist. LEXIS 28830, *15 n.3 (D. Conn. May 12, 2006). At this point, neither party has asserted that any witness is unwilling to travel to Connecticut. See A Slice of Pie Prods. v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 308 (D. Conn. 2005) (finding it irrelevant on motion to transfer based on speculation as to whether witnesses would be willing to travel to court). Transfer to Florida, however, would ensure that the court could subpoena important witnesses and compel them to testify; this Court is unable to do that. See Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974). Thus, this factor weighs in favor of transfer.

### G.  Relative Means of the Parties

The "relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider." Michelli v. City of Hope, 1994 U.S. Dist. LEXIS 10755, *3 (S.D.N.Y. 1994). The Court

must bear in mind in this case that plaintiffs are two individuals while defendants are two large corporations. This factor weighs strongly against transfer. See Hawley, 552 F.2d at 260-61.

In light of these factors, the Court finds that transfer would be in the interest of justice. The locus of facts and a majority of non-party witnesses are located in Florida. These two large factors are countered mostly by plaintiffs' choice of forum and the financial hardship that they will face by being forced to prosecute this action in Florida. Nonetheless, these factors against transfer do not outweigh the factors in favor of transfer. The Court will therefore grant defendants' motion to transfer venue to the Southern District of Florida.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to transfer venue (Doc. #26). In addition, the Court DENIES defendant Barroncini's motions to dismiss and to transfer venue (Docs. #25, 27) as moot in light of the dismissal of all claims against him. The Clerk is instructed to transfer this case to the Southern District of Florida.

Dated at Bridgeport, Connecticut, this 18th day of March, 2010.

                         /s/
                      Warren W. Eginton
                      Senior United States District Judge